# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

03 JAN 31 PM 3: 52

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| RONALD LUCKEY, | ] |
| Plaintiff, | ] |
| v. | ] CV-01-BE-0881-S |
| WILLIAM J. HENDERSON, POSTMASTER GENERAL, | ] |
| Defendant. | ] |

**ENTERED**
JAN 31 2003

## MEMORANDUM OPINION

This case is before the court on the "Defendant's Motion for Summary Judgment" (Doc. 15). The court reviewed the briefs and evidentiary submissions by both parties, required supplemental briefing, and held two hearings in this case. For the reasons stated below, the court finds that the defendant's Motion for Summary Judgment is due to be GRANTED.

### Procedural History

Plaintiff Ronald Luckey filed suit on April 9, 2001 against his former employer William J. Henderson as Postmaster General. Count One of the complaint asserted a claim for violations of the Rehabilitation Act of 1973, as amended. Plaintiff voluntarily dismissed his Title VII claim of race discrimination, which he had asserted in Count Two. (See Doc. 20) Therefore, the only issue before the court is whether the defendant is entitled to summary judgment on plaintiff's claims of discrimination based on a disability.

1

34

**Facts**[1]

Mr. Luckey was a temporary employee hired by the United States Postal Service under a temporary contract. Under that temporary contract, the Postal Service hired Mr. Luckey to be a letter carrier in 1993. He performed these duties as a transitional employee until June 24, 1994, when he suffered an on-the-job injury.

After his injury, Mr. Luckey underwent a functional capacity evaluation, which determined he was "unable to meet the lifting, carrying, and reaching demands necessary for his pre-injury job of Postal Carrier." Because he was unable to perform the duties of a letter carrier, the Postal Service placed Mr. Luckey in a light duty assignment, which actually consisted of a composite of tasks from different job assignments.. Mr. Luckey performed these duties for almost 16 months before the postal service decided not to renew his contract. His contract of employment initially expired in April, 1995, but the Postal Service extended the contract even though Mr. Luckey was unable to perform the functions of the letter carrier position. Both parties admitted that the Postal Service accommodated Mr. Luckey's restrictions until it did not renew his contract on April 29, 1996.

During all times after his injury, Mr. Earl Woodard was Mr. Luckey's direct supervisor. Mr. Luckey described his duties as including "answering the telephone, handling customer complaints, inquires, work on maps, miscellaneous paperwork and office duties .... Special Delivery work ... errands, worked in cage (restricted area) as a clerk, passing out certified mail, registered mail." Mr. Luckey also did some work delivering Express Mail.

---

[1] For the most part, this recitation of facts is taken from the plaintiff's brief and evidentiary submissions. Citations to the submission are omitted.

2

Mr. Luckey admitted that the duties he was performing were not part of a single regular postal service job. Mr. Luckey claims that he could have performed the essential job functions of a clerk, a customer service representative, or a special delivery messenger. However, Mr. Luckey admitted that he did not apply for any of these positions because he knew that transitional employees could not apply for career positions.

To be eligible for a career position at the Postal Service, a person must successfully complete and pass an entrance exam. As vacancies occur, applicants are called in for employment consideration in order of their scores.

Mr. Luckey took the competitive examination on September 26, 1994, for clerk/carrier to be placed into the register of persons eligible to be considered for career clerk/carrier positions. Mr. Luckey received a final eligibility rating of 76.20. However, Mr. Luckey's eligibility rating expired on October 7, 2000, without his name ever being reached on the register of eligibles.

After leaving the Postal Service, Mr. Luckey worked for two different companies as a security guard *without* the need for an accommodation. Mr. Luckey has not been absent from his current job because of his alleged physical disability and, according to his testimony, can "generally perform day to day activities such as dressing [himself], walking around the house and that sort of thing," unless he has an episode of pain.

### Standard for Summary Judgment

When a district court reviews a motion for summary judgment under Federal Rules of Civil Procedure 56, it must determine two things: (1) whether any genuine issues of material fact exist; and, if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). To succeed, the moving party bears the burden of establishing both prongs of the

3

summary judgment test. The nonmoving party may defeat the motion for summary judgment by establishing <u>either</u> genuine issues of material fact <u>or</u> that the movant is not entitled to judgment as a matter of law.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56). The party seeking summary judgment can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 477 U.S. at 323.

When the moving party has met his burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56 (e)). The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on his pleadings." 477 U.S. at 324. "The plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In responding to a properly-supported motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Substantive law determines which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A dispute raises a genuine issue of fact "only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson*, 477 U.S. at 249. Material facts affect the outcome of the trial under governing law. 477 U.S. at 248. To determine whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 249; *Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002); *Witter v. Delta Airlines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998).

After both parties have addressed the motion for summary judgment, the court must grant the motion <u>if</u> no genuine issues of material fact exist <u>and if</u> the moving part is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which the jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1998). The court should not weigh the

evidence, or make determinations as to the credibility of witnesses because these decisions fall to the provence of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Thus, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham*, 193 F.3d at1282 (quoting *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).

### "Disabled" under Rehabilitation Act

Plaintiff's exclusive remedy for alleged disability discrimination in connection with his employment is the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 *et seq. McGuinness v. United States Postal Service*, 744 F.2d 1318, 1322 (7th Cir. 1984). "To establish a prima facie case of discrimination under the [Rehabilitation] Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability." *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999); *Jackson v. Veterans Admin.*, 22 F.3d 277, 280-81 (11th Cir. 1994). The standard for determining liability under the Rehabilitation Act is the same as that under the Americans With Disabilities Act (ADA). *Sutton v. Lader*, 185 F.3d. at 1207.

A disabled person is one who "(i) has a physical or mental impairment which *substantially limits* one or more of such person's *major life activities*; (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."29 C.F.R. § 1614.203 (a)(1) (Emphasis added).

In *Toyota Motor Manufacturing of Kentucky, Inc. v. Williams*, the Supreme Court

6

recently held that "substantially," in the phrase "substantially limits," suggests "considerable" or "to a large degree"; and that "major life activities" refers to "those activities that are of central importance to daily life." 535 U.S. 391, 122 S. Ct. 681, 691 (2002) Furthermore, individuals attempting to prove disability status cannot succeed if they merely submit evidence of a medical diagnosis of impairment. <u>Williams,</u> 122 S. Ct. at 691. The Supreme Court noted that the terms "substantially" and "major," as used in the provision defining "disability," need to be interpreted strictly to create a demanding standard for qualifying as disabled. *See Williams*, 122 S. Ct. at 691.

The Postal Service does not dispute that Mr. Luckey's condition is a physical impairment. Nor does the Postal Service dispute that, because of that condition, Mr. Luckey was unable to perform the required duties of a letter carrier and other positions at the Postal Service because of the heavy lifting requirements of those jobs. However, in determining whether a person is "disabled" under the Act, "the central inquiry must be whether the claimant is unable to perform the tasks central to most people's daily lives, *not whether the claimant is unable to perform the tasks associated with [his] specific job.*" *Williams*, 122 S. Ct. at 693 (emphasis added).

The issue, then, is whether Mr. Luckey has a physical impairment that *substantially* limits one or more *major* life activities. Although Mr. Luckey was restricted from working as a carrier or clerk because of the weight restrictions, these restrictions did not prevent him from working any number of other jobs. Mr. Luckey testified at his deposition that after leaving the Postal Service, he worked for two different companies as a security guard without the need for an accommodation. His current employment, likewise, does not require an accommodation, and he can generally perform day-to-day activities such as dressing himself and walking around the

house unless he has an episode of sporadic pain. (Exhibit D, Luckey depo p. 53-55).

The court finds Mr. Luckey's limitations to be similar to those faced by the plaintiff in the *Williams* case. In that case, the plaintiff's medical condition (carpal tunnel syndrome) caused her to avoid sweeping, to quit dancing, to occasionally seek help dressing, and to reduce how often she played with her children, gardened and drove long distances. The Supreme Court held that "these changes in her life did not amount to such severe restrictions in the activities that are of central importance to most people's daily lives that they establish a manual-task disability as a matter of law." *Williams*, 122 S. Ct. at 694.

Other cases decided prior to *Williams* also concluded that injuries or limitations similar to Mr. Luckey's are not "disabilities" within the meaning of the Act. *See Cowell v. Suffolk County Police Dept*, 158 F.3d 635 (2d Cir. 1998) *cert. denied,* 526 U.S. 1018, 119 S.Ct. 1253 (1999) (holding police officers with back injuries that interfered with standing, sitting, lifting, sleeping and walking were not "disabled" under the Act); *Sherrod v. American Airlines*, 132 F.3d 1112 (5th Cir. 1998) (holding inability to lift more than 45 pounds occasionally or 25 pounds regularly was not a "disability" because it only disqualified plaintiff from a narrow range of jobs); *see also Chanda v. Engelhard/ICC*, 234 F.3d 1219 (11th Cir. 2000) (holding claimant was not "disabled" under the Act where the claimant's only severe restrictions were related to a narrow category of tasks, and employee acknowledged he could perform daily activities).

Based on the Supreme Court's analysis in *Williams*, Mr. Luckey failed to establish that he is disabled within the meaning of the Rehabilitation Act. While Mr. Luckey may have been disqualified from certain jobs requiring heavy lifting, his own testimony shows he has not been substantially excluded from the work force in general. He has held several jobs since leaving the

Postal Service, all without any accommodation. Therefore, the Motion for Summary Judgment is due to be granted because plaintiff is not diabled.

### Reasonable Accommodation

Although the court has concluded that the defendant is entitled to judgment as a matter of law because Mr. Luckey is not disabled, another argument merits discussion.[2] After the original briefs were submitted, the United States Supreme Court decided *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 122 S. Ct. 1516 (April 29, 2002). Therefore, the court ordered the parties to file supplemental briefs as to what effect, if any, the *Barnett* decision has on this case.

In *Barnett*, the Supreme Court addressed the issue of whether the requirement under the ADA that an employer provide reasonable accommodation to a disabled employee takes priority over the employer's seniority system. 122 S. Ct. at 1520. The Court determined that "nothing in the statute . . . suggests Congress intended to undermine seniority systems in this way. And we consequently conclude that the employer's showing of violation of the rules of a seniority system is by itself ordinarily sufficient." 122 S. Ct. at 1525.

The Supreme Court in *Barnett* specifically focused on a requested accommodation that would violate a seniority system. The seniority system in *Barrett*, however, was a unilateral system established by the employer, not one created by a collective bargaining agreement. The Court noted that "lower courts have unanimously found that collectively bargained seniority trumps the need for reasonable accommodation in the context of the linguistically similar Rehabilitation Act . . . . 22 S. Ct. at 1524 (Citations omitted.)

---

[2]The defense also argues that Mr. Luckey is not "otherwise qualified." Because the court grants summary judgment on two alternative grounds, the court finds addressing this third argument unnecessary.

9

Although the Postal Service does not assert the seniority system *per se* to argue that the accommodation sought by Mr. Luckey was not reasonable, it does assert the collective bargaining agreement. The collective bargaining agreement mandates the method for filling vacancies in career positions. To promote Mr. Luckey to a career position as an accommodation for his purported disability would violate those provisions of the agreement. The method of awarding jobs under the collective bargaining agreement supports the employees' expectations of consistent treatment in filling those jobs – expectations the Supreme Court found important to uphold in *Barnett*. *See* 122 S. Ct. at 1524-25. The method of filling career positions is one component of the collective bargaining agreement that provides expectations and benefits to employees in much the same way as a seniority system does. Thus, the question here is sufficiently analogous to the issue in *Barnett* for the decision in that case to apply here.

In this case, the Postal Service demonstrated that its collective bargaining agreement would be violated by placing a temporary employee into a career position. The only positions Mr. Luckey identified as being open and for which he claims he was qualified[3] were career positions.

Both the plaintiff and defendant assert that the Rehabilitation Act regulations govern re-assignment of non-probationary employees as an accommodation. However, the regulations require consideration of reassignment of non-probationary employees to positions of the *same grade and level*, but exempt reassignments that would be inconsistent with the terms of any

---

[3] As noted, the defendant disputes Mr. Luckey was "otherwise qualified" for these positions.

10

Postal Service collective bargaining agreement. 29 C.F.R. § 1614.203(g).[4] The manner in which positions are awarded under a collective bargaining agreement is a mandatory subject of bargaining. Mr. Luckey was not entitled to be considered for a career position when he had only worked as a temporary or transitional employee. While under some circumstances an employer may be required under the Rehabilitation Act to reassign an employee as a reasonable accommodation, the employer is not required to promote the individual as an accommodation. *Lucas v. Gainer*, 257 F.3d 1249, 1256 (11th Cir. 2001). Reassigning Mr. Luckey to a career position would have been a "promotion," and would have violated the collective bargaining agreement. Such reassignment would not be a reasonable accommodation.

However, the Supreme Court in *Barnett* did not adopt a *per se* rule that a reassignment in

---

[4]The passage reads: (g) Reassignment. When a nonprobationary employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position located in the same commuting area and serviced by the same appointing authority, and at <u>the same grade or level</u>, the essential functions of which the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of its program. In the absence of a position at the same grade or level, an offer of reassignment to a vacant position at the highest available grade or Level <u>below</u> the employee's current grade or level shall be required, but availability of such a vacancy shall not affect the employee's entitlement, if any, to disability retirement ...If the agency has already posted a notice or announcement seeking applications for a specific vacant position at the time the agency has determined that the nonprobationary employee is unable to perform the essential functions of his or her position even with reasonable accommodation, then the agency does not have an obligation under this section to offer to reassign the individual to that position, but the agency must consider the individual on an equal basis with those who applied for the position. <u>For the purpose of this paragraph, an employee of the United States Postal Service shall not be considered qualified for any offer of reassignment that would be inconsistent with the terms of any applicable collective bargaining agreement.</u>
29 C.F.R. § 1614.203(g) (emphasis added).

This Regulation has been amended and this language does not appear in the current version of the Regulation. However, counsel for both parties agree that this language was in effect at the times relevant to this case.

11

violation of a seniority system was never a reasonable accommodation. Instead, the Court held that the employee

> remains free to show that special circumstances warrant a finding that, despite the presence of a seniority system (which the ADA may not trump in the run of cases), the requested "accommodation" is "reasonable" on the particular facts. That is because special circumstances might alter the important expectations [of a seniority system] . . . [T]he plaintiff must bear the burden of showing special circumstances make an exception from the seniority system reasonable in the particular case. And to do so, the plaintiff must explain why, in the particular case, an exception to the employer's seniority policy can constitute a 'reasonable accommodation' even though in the ordinary case it cannot.

*Barnett*, 122 S. Ct. at 1525.

The only exception offered by Mr. Luckey to meet the burden imposed by *Barnett* was the "exception" he claimed exists in 29 C.F.R. § 1614.203(g). As already discussed, that regulation only requires reassignment of employees within the same grade and level. The positions Mr. Luckey desired were career positions, not temporary positions. The collective bargaining agreement governs the method of selecting career positions. The regulation on which Mr. Luckey relies further provides that an employee cannot be considered qualified for any "reassignment that would be inconsistent with the terms of any applicable collective bargaining agreement." 29 C.F.R. § 1614.203(g). Therefore, the "exception" on which Mr. Luckey relies does not allow for a reassignment or accommodation that violates a collective bargaining agreement and thus is no "exception" to the bargaining agreement. Thus, Mr. Luckey failed to meet the burden imposed on him by *Barnett* to show special circumstances to rebut the presumption that the accommodation he sought was not reasonable in this case.

For these reasons, the court concludes that transferring Mr. Luckey to a career position

would not be a reasonable accommodation under the Rehabilitation Act. Because the Postal Service showed that the assignment would violate the collective bargaining agreement, and Mr. Luckey failed to present evidence of special circumstances, summary judgment is warranted for the Postal Service.

## Conclusion

The Postal Service established that it is entitled to summary judgment on two alternative grounds. First, Mr. Luckey does not qualify as disabled under the Rehabilitation Act. Second, even if he were disabled, the accommodations sought were not reasonable because (1) the accommodation would require a promotion to a career position, and (2) the accommodation would violate the collective bargaining agreement. The employer is not required to make such an accommodation.

The court will enter a separate order granting summary judgment for the Postal Service.

DONE and ORDERED this 31st day of January, 2003.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

13